IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ELIZABETH DESILVA and NILHARN DESILVA, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| U.S. BANCORP, d/b/a US Bank and U.S. BANK NATIONAL ASSOCIATION, d/b/a US Bank | |
| Defendant. | |

## CLASS ACTION COMPLAINT

COME NOW, Plaintiff ELIZABETH DESILVA and Plaintiff NILHARN DESILVA ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby file this class action complaint against U.S. BANCORP, d/b/a US Bank and U.S. BANK NATIONAL ASSOCIATION, d/b/a US Bank (collectively "Defendants" or "U.S. Bank"), and, in support thereof, allege the following:

### INTRODUCTION

1. Plaintiffs bring this action individually and on behalf of others similarly situated against Defendants, arising from its routine practice of (a) opening bank accounts without the knowledge or consent of its customers; and (b) processing debits or deposits without Plaintiffs' knowledge or consent.

2. U.S. Bank's practice of (a) opening bank accounts without the knowledge or consent of its customers; and (b) processing debits or deposits without Plaintiffs'

1

knowledge or consent has caused significant stress to, and hardship and financial losses for, its customers.

3. U.S. Bank's improper practices have unjustly enriched U.S. Banks to the detriment of Plaintiffs and the Class Members. Furthermore, U.S. Bank's improper practices are a violation of the Minnesota Unfair and Deceptive Trade Practices Act.

4. Plaintiffs, individually and on behalf of Classes, seeks damages, restitution, and public injunctive relief for Defendants' violations as set forth more fully below.

5. This is not the first time that U.S. Bank National Association has been involved in opening consumer deposit accounts without consumers' knowledge and consent. In 2022, The Consumer Financial Protection Bureau (Bureau) entered a consent order as a result of U.S. Bank National Association unlawful practice of opening consumer deposit accounts without consumers' knowledge and consent and creating sales pressure on its employees that led to employees opening deposit accounts without consumers' knowledge and consent, among other things.[1] The Consent Order provided that "Respondent's acts or practices described herein harmed Affected Consumers including through fees charged on unauthorized accounts; negative impacts to consumer credit profiles; the loss of control over personal identifying information; and the expenditure of consumer time and effort investigating the facts, seeking closure of unwanted accounts, and monitoring and mitigating harm going forward."[2]

---

[1] ***Consent Order***, 2022-CFPB-0006 (July 28, 2022), *available at* *https*://files.consumerfinance.gov/f/documents/cfpb_us-bank_-na_consent-order_2022-07.pdf
[2] *Id*.

2

6.     U.S. Bank's policies and practices today continue to cause the same hardships.

7.     U.S. Bank should have known that its practice was unlawful as The Consumer Financial Protection Bureau issued guidance to rein in creation of fake accounts in May 10, 2023.

## PARTIES

8.     Plaintiff Elizabeth DeSilva ("Plaintiff" or "Plaintiff Elizabeth DeSilva") is a citizen of the State of Missouri, residing in Saint Charles, Missouri. Plaintiff Elizabeth DeSilva is therefore a citizen of the state of Missouri.

9.     Plaintiff Nilharn DeSilva ("Plaintiff" or "Plaintiff Nilharn DeSilva") is a citizen of the State of Missouri, residing in Saint Charles, Missouri. Plaintiff Nilharn DeSilva is therefore a citizen of the state of Missouri.

10.    Plaintiffs Elizabeth DeSilva and Nilharn DeSilva are collectively referred to herein as "Plaintiffs."

11.    Without the knowledge or consent of Plaintiffs, Defendants unilaterally opened two accounts in Plaintiff Elizabeth DeSilva and Plaintiff Nilharn DeSilva's names ("Fake Accounts").

12.    On March 14, 2024, without the knowledge or consent of Plaintiffs, Defendants processed a deposit of $2,581.66 of Plaintiff Elizabeth DeSilva's money into what the CFPB would refer to as a fake account on March 14, 2024.

3

13. On March 13, 2024, without the knowledge or consent of Plaintiffs, Defendants processed a deposit of $13,231.27 of Plaintiffs' money into what the CFPB would refer to as a fake account.

14. On March 25, 2024, without the knowledge or consent of Plaintiffs, Defendants processed a debit in the amount of $18.75 out of what the CFPB would refer to as one fake account and processed a deposit in the amount of $18.75 into what the CFPB would refer to as a second fake account.

15. Defendant U.S. Bancorp, d/b/a US Bank is a Delaware corporation with its principal place of business located at 800 Nicollet Mall in Minneapolis, Minnesota. Defendant U.S. Bankcorp, d/b/a US Bank can be served through its registered agent C T Corporation System Inc. located at 1010 Dale St N, St Paul, MN 55117-5603.

16. Defendant U.S. Bancorp has $663 billion in assets as of December 31, 2023, is No. 107 on the Fortune 500, has more than 70,000 employees, and has more than 2,000 branches in 26 states.[3] Defendant U.S. Bancorp is the fifth largest commercial bank in the country with over $28 billion in annual revenue and 18 million customers. Defendant U.S. Bancorp is a global company has its headquarters located at 800 Nicollet Mall in Minneapolis. *See*, *Id*. Defendant U.S. Bancorp's retail branch network in the United States is concentrated in the Midwest and West with a recent expansion to the East Coast, but Defendant U.S. Bancorp's digital footprint is worldwide. *See*, *Id*.

---

[3] *See* https://www.usbank.com/about-us-bank/fact-sheet.html.

4

17. Defendant U.S. Bancorp represents that:

In this increasingly digital age, our customers are located across the country and opt to bank via the U.S. Bank Mobile App. In fact, more than 80% of consumer transactions are now completed digitally. […] We offer a wide range of financial products, services and tools to individuals, families, small- and mid-sized businesses, large companies, governmental agencies and institutions. From checking accounts and voice banking to card readers and corporate bonds, we aim to serve customers with a blend of human expertise and leading digital innovation. Our U.S. Bank Mobile App, for example, has provided 2 billion personalized insights to customers about spending trends, saving opportunities and more.

*Id.*

18. Defendant U.S. Bancorp is the parent company of U.S. Bank National Association. *See, id*.

19. Defendant U.S. Bancorp represents that:

U.S. Bancorp has been recognized for its approach to digital innovation, community partnerships and customer service, including being named one of the 2023 World's Most Ethical Companies® and most admired superregional bank by Fortune®.[4]

20. Defendant U.S. Bank National Association has its main office is located at 425 Walnut St Cincinnati, OH 45202.  U.S. Bank National Association is, therefore, a citizen of Ohio. Defendant U.S. Bank National Association maintains its headquarters in Minneapolis, Minnesota. U.S. Bank National Association's primary website is www.usbank.com. U.S. Bank National Association can be served through its registered agent CT CORPORATION SYSTEM, located at 4400 Easton Commons Way, Suite 125 Columbus OH 43219.

---

[4] *See, e.g.*, https://s203.q4cdn.com/711684571/files/doc_financials/2023/ar/US-Bancorp-2023-Annual-Report_ADA.pdf (About Us Section at 3).

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class, including Plaintiff, is a citizen of a state different than any Defendant.

22. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant U.S. Bancorp has its principal place of business and/or headquarters in Minneapolis, Minnesota and Defendant U.S. Bancorp regularly transacts business in this District and U.S. Bank National Association has its main office and headquarters in Minneapolis, Minnesota and Defendant U.S. Bancorp regularly transacts business in this District.

23. This Court has personal jurisdiction over Defendants because Defendants conduct business and maintain their headquarters or have a Main Office in Minnesota. Additionally, Defendants maintain several U.S. Bank branches in the state of Minnesota.

## FACTUAL ALLEGATIONS

**A. U.S. Bank Unilaterally Opens What the CFPB Refers to as Fake Accounts in Plaintiffs' and the Class Members' Names and Unilaterally Processes Debits and/or Deposits Into or Out of These Fake Accounts**

24. Defendants unilaterally open accounts in Plaintiffs and the Class Members names without the knowledge or consent of Plaintiffs and the Class Members.

25. Defendants unilaterally open accounts in Plaintiffs and the Class Members to process debits or deposits.

26. For example, Defendants unilaterally opened two Fake Accounts in Plaintiff Elizabeth DeSilva and Plaintiff Nilharn DeSilva's names.

27. On March 14, 2024, without the knowledge or consent of Plaintiffs, Defendants processed a deposit of $2,581.66 of Plaintiff Elizabeth DeSilva's money into what the CFPB would refer to as a fake account on March 14, 2024.

28. On March 13, 2024, without the knowledge or consent of Plaintiffs, Defendants processed a deposit of $13,231.27 of Plaintiffs' money into what the CFPB would refer to as a fake account.

29. On March 25, 2024, without the knowledge or consent of Plaintiffs, Defendants processed a debit in the amount of $18.75 out of what the CFPB would refer to as one fake account and processed a deposit in the amount of $18.75 into what the CFPB would refer to as a second fake account.

**B. The CFPB Has Fined U.S. Bank for Opening Fake Accounts in the Past.**

30. According to the Consumer Financial Protection Bureau (CFPB) in 2022, U.S. Bank illegally opened accounts for customers without their permission for a ten (10) year period.

31. "For over a decade, U.S. Bank knew its employees were taking advantage of its customers by misappropriating consumer data to create fictitious accounts," said CFPB Director Rohit Chopra in a press release.

32. The CFPB said its investigation found evidence that the bank was aware that its employees were opening accounts without customers' authorization, and did not have

7

measures in place to prevent and detect them. The bank's sales campaigns and compensation programs rewarded employees for selling bank products, the agency added.

33. "U.S. Bank's conduct harmed its customers in the form of unwanted accounts, negative effects on their credit profiles, and the loss of control over personally identifiable information," the CFPB said in its release, saying customers were forced to close the unauthorized accounts in their names and seek refunds themselves.

34. As a result, the CFPB fined the U.S. Bank.

35. As described above, U.S. Bank has continued to engage in this type of practice.

**C. U.S. Bank Should Have Known the Practice of Opening Fake Accounts to Process Debits or Deposits Was Wrongful.**

36. Defendants should have known better, as, on Monday May 10, 2023, the Consumer Financial Protection Bureau (CFPB or the Bureau) released a circular regarding the Bureau's newest guidance that if a "financial institution unilaterally reopens [deposit] accounts to process debits or deposits, it can constitute an unfair practice under the [Consumer Financial Protection Act of 2012] CFPA."

37. In particular, "[B]anks may risk violating the Consumer Financial Protection Act's prohibition on unfair acts or practices by unilaterally reopening closed accounts. Consumers may incur overdraft, nonsufficient funds, or monthly maintenance fees when a closed account is reopened by the bank. This practice may also enable third parties to access a consumer's funds without consent. If reopening the account overdraws the account, banks may also furnish negative information to consumer reporting companies if consumers do

8

not settle negative balances quickly. Consumers often cannot reasonably avoid the risk of substantial injury caused by this practice because they cannot control a third party's attempt to debit or deposit money, the process and timing of account closure, or the terms of deposit account agreements."

38. The CFPB previously ordered USAA Federal Savings Bank to pay more than $15 million in consumer remediation and penalties for, among other things, violating the Consumer Financial Protection Act by reopening deposit accounts consumers had previously closed without seeking prior authorization or providing adequate notice.[5]

39. Similarly, Fifth Third entered into a Consent Order related, in part, to opening deposit accounts for Fifth Third consumers without the consumers' knowledge and consent. In that case, "[s]ome of these unauthorized accounts were "funded" when a bank employee transferred funds to the unauthorized account from the same consumer's authorized account without the consumer's knowledge and consent. Often, once an unauthorized account was "funded," such that it qualified under the sales-goal tracking or incentive program, the bank employee transferred some or all of the funds back to the consumer's authorized account, again without the consumer's knowledge and consent. Sometimes, Fifth Third's employee closed an existing account and immediately opened a new one or reopened the just-closed account, getting sales credit for a new account."[6]

---

[5] Attached as **Exhibit B** *see* "CFPB Issues Guidance to Rein in Creation of Fake Accounts to Harvest Fees," *available at* https://www.consumerfinance.gov/about-us/newsroom/cfpb-issues-guidance-to-rein-in-creation-of-fake-accounts-to-harvest-fees/.
[66] *See* https://files.consumerfinance.gov/f/documents/cfpb_fifth-third-bank-opinion-and-order_2024-07.pdf.

40. "Unauthorized-Account-Opening Acts or Practices" means any of the following: i. applying for, opening, issuing, activating, or enrolling a consumer in any Consumer-Financial Product or Service, including but not limited to lines of credit, credit cards, deposit accounts, and onlinebanking services, without the consumer's consent; and ii. transferring funds between a consumer's accounts without the consumer's consent or authorization.

41. The circular attached as **Exhibit A** highlights that an institution's unilateral reopening of a deposit account that a consumer previously closed can constitute an unfair act or practice under the Consumer Financial Protection Act.

## CLASS ACTION ALLEGATIONS

42. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All individuals or businesses in the United States who U.S. Bank unilaterally opened a U.S. Bank account and which U.S. Bank processed a debit and/or a deposit to that account prior to April 7, 2024.

43. The Nationwide Class and the Missouri Class are collectively referred to herein as the "Class" and members of the Nationwide Class and Missouri Class are collectively referred to as "Class Members."

44. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

45. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or to add a Subclass(es) if necessary before this Court determines whether certification is appropriate.

46. **Numerosity– Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained by resort to Defendants' records. Defendants have the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs. It is impracticable to bring members' of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

47. **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business

11

practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Such common questions which predominate over any questions affecting only individual Class Members include, but are not limited to:

   a) Whether Defendants unilaterally opened one or more bank accounts in Plaintiffs and the Class Members' respective names;

   b) Whether Defendants processed one or more debits and/or deposits from the unauthorized account;

   c) Whether the conduct enumerated above constitutes unjust enrichment;

   d) Whether the conduct enumerated above constitutes conversion;

   e) Whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief.

48. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because they arise out of the same wrongful business practices by Defendants, as described herein. Specifically, Defendants unilaterally opened one or more bank account(s) in Plaintiffs and the Class Members' names and processed one or more deposits and/or debits. This uniform injury and the legal theories that underpin recovery make the claims of Plaintiffs and the members of the Class typical of one another.

49. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are more than an adequate representative of the Class in that Plaintiffs were subject to Defendants' practice of unilaterally opening a bank in Plaintiffs' name and processing a deposit and a debit from the unauthorized account and, as a result Plaintiffs

have suffered damages and Defendants have been unjustly enriched. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class. In addition:

a) Plaintiffs have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b) Plaintiffs and Plaintiffs' Counsel are committed to the vigorous prosecution of this action on behalf Plaintiffs and all others similarly situated;

c) Neither Plaintiffs, nor Plaintiffs' Counsel, have any interest that is adverse or antagonistic to the interests of the Class Members and Defendants have no defenses unique to Plaintiffs;

d) There is no conflict of interest between Plaintiffs and the unnamed members of the Classes;

e) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

f) Plaintiffs' legal counsel has financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

50. **Superiority – Federal Rule of Civil Procedure 23(b)(3):** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

51.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seek to certify a Class to enjoin Defendants.

52.     Defendants have acted or refused to act on grounds generally applicable to each of the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the classes as a whole.

53.     **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class members may be readily identified through Defendants' books and records or Plaintiffs' records.

**COUNTS**

**COUNT I**
**UNJUST ENRICHMENT**
**ON BEHALF OF PLAINTIFFS AND THE CLASS MEMBERS**

54.     Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

55.     As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiffs and the Class through the payment of fees, penalties, and other charges resulting from accounts that Defendants unlawfully and/or deceptively opened for customers.

56.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the

Class, in light of the fact that Defendants used illegal, deceptive, and/or unfair practices to open accounts for customers without their knowledge or consent in order to process debits and/or credit to extract money from Plaintiffs they were not entitled to.

57. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the Class for the monies taken by Defendants as a result of the unfair, deceptive, and/or illegal practices described above.

## COUNT II
## CONVERSION
## ON BEHALF OF PLAINTIFFS AND THE CLASS MEMBERS

58. Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

59. Plaintiffs and Class members own and have the right to possess the money that is transferred to an account that was opened without the knowledge, consent, or authorization of Plaintiffs and Class members.

60. Defendants interfered with Plaintiffs' and Class members' possession of this money by wrongfully crediting a fake account to extract money directly from the fake accounts.

61. Plaintiffs and Class members never consented to Defendants opening the fake account, processing debits and/or credits to the fake account, and/or taking the money directly from the fake accounts.

62. As a result of these actions, Plaintiffs and Class members were damaged.

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of the other members of the proposed Class, respectfully requests that the Court enter judgment in Plaintiffs' and the Class's favor and against Defendants as follows:

- A. Certifying the Class and appointing Plaintiffs as Class representatives;
- B. Appointing Plaintiffs' counsel as class counsel;
- C. Declaring that Defendants' past conduct was unlawful, as alleged herein;
- D. Declaring Defendants' ongoing conduct is unlawful, as alleged herein;
- E. Enjoining Defendants from continuing the unlawful practices described herein, and awarding such injunctive and other equitable relief as the Court deems just and proper, including ***but not limited to***, maintaining policies and procedures that:
    - a) ensure U.S. Bank does not set performance-management and sales goals for its employees that foster Unauthorized-Account Opening Acts or Practices; this includes, but is not limited to, maintaining, or continuing to maintain, policies and procedures that:
        - (i) do not allow product-specific goals;
        - (ii) utilize incentive-compensation clawback policies for employees found to have engaged in Unauthorized-Account-Opening Acts or Practices;
        - (iii) do not incentivize employees to open accounts that do not get used or funded;
        - (iv) provide contemporaneous notifications to customers when accounts are opened; and
        - (v) otherwise ensure rigorous control and auditing functions to detect and prevent employee misconduct relating to potential unauthorized accounts.
    - b) require the collection and retention of evidence demonstrating that a consumer has authorized the application, issuance, or opening of any Consumer Financial Product or Service; and

    c)    ensure that U.S. Bank:

        (vi)    appropriately handles consumer inquiries or complaints concerning Unauthorized-Account Opening Acts or Practices;

        (vii)    appropriately handles employee inquiries, concerns, or complaints concerning sales pressure or Unauthorized-Account-Opening Acts or Practices;

        (viii)    tracks indicia of Unauthorized-Account-Opening Acts or Practices;

        (ix)    identifies unauthorized account openings and remediates affected consumers; and

        (x)    provides employee training reasonably designed to prevent Unauthorized-Account-Opening Acts or Practices.

    d)    Awarding Plaintiffs and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

    e)    Awarding Plaintiffs and the Class members pre-judgment and post-judgment interest;

    f)    Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

    g)    Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class, demand a trial by jury of any and all issues in this action so triable of right.

Date:  December 5, 2024     By: /s/   Kate M. Baxter-Kauf

    Kate M. Baxter-Kauf (MN #0392037)
    Karen Hanson Riebel (MN #0219770)
    **LOCKRIDGE GRINDAL NAUEN PLLP**
    100 Washington Avenue South, Suite 2200
    Minneapolis, MN 55401
    Telephone: (612) 339-6900
    Facsimile: (612) 339-0981
    kmbaxter-kauf@locklaw.com
    khriebel@locklaw.com

    Tiffany Marko Yiatras (to be admitted *pro hac vice*)
    Francis J. "Casey" Flynn, Jr. (to be admitted *pro hac vice*)
    **CONSUMER PROTECTION LEGAL, LLC**
    308 Hutchinson Road
    Ellisville, Missouri 63011-2029
    Tele: 314-541-0317
    tiffany@consumerprotectionlegal.com
    casey@consumerprotectionlegal.com

    ***Attorneys for Plaintiffs and the Proposed Class***